UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN BROTHERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:07-CV-0415-B |
| | § | |
| PRINT, INC., PITNEY BOWES INC., and | § | |
| GARY STEVENS, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM ORDER

Before the Court is Defendants Gary Stevens, Print, Inc., and Pitney Bowes, Inc.'s Motions to Dismiss Plaintiff's Second Amended Complaint. For the reasons that follow, the Court GRANTS, in part, and DENIES, in part, Print's Motion to Dismiss (doc. 23), DENIES Pitney Bowes, Inc.'s Motion to Dismiss (doc. 24), and GRANTS Stevens' Motion to Dismiss (doc. 17).

### I. Background

The Court takes its factual account from Plaintiff's Second Amended Complaint ("Compl.") (doc. 19) and on undisputed facts gleaned from the parties' court papers. In the fall of 2001, Defendant Print, Inc. ("Print") hired Plaintiff John Brothers ("Brothers") who became a top-producing salesperson. (Compl. ¶ 8). Later in 2002, Brothers was indicted on felony charges in the U.S. District Court for the Eastern District of North Carolina arising from his activities as an officer and member of the board of directors of a previous employer. (*Id.* at ¶ 9).

Brothers initially sought to contest the charges and "exonerate his good name" because he believed the charges were unfounded. (*Id.* at ¶ 10). However, on April 8, 2004, Brothers ultimately

- 1 -

pled guilty because he believed that he could rely on several contracts he purportedly made with Defendants. (*Id.* at ¶ 11). On November 21, 2006, Brothers was sentenced to 20 months of imprisonment. (*Id.* at ¶ 20).

**A.     The Contracts**

   *1.     The Oral Promises*

"In late 2002 to early 2003," Brothers advised Defendant Gary Stevens ("Stevens"), then Print's CEO, and other Print executives of the indictment. (*Id.* at ¶ 10). Several ensuing conversations took place between Stevens, other Print executives and Brothers "in early 2003" which were "either at Print's office in Dallas, Texas or over the telephone." (*Id.*). First, Print executives "emphatically assured Brothers that *they and Print* would stand behind him whatever his decision was" and "continually assured Brothers" that Print would "honor *their* promises." (*Id.* at ¶¶ 10-11) (emphasis added). Second, Stevens specifically assured Brothers that "he would have a job at Print regardless of the outcome of the indictment and that Print would continue to employ him and take care of him and his family during this ordeal." (*Id.*). Third, Print President Dan Brady, who was present during "some of these conversations," assured Brothers that Print would continue to pay his commissions during any potential incarceration. (*Id.*). In November 2004, Sarah Boden joined Print as its president and chief operating officer and was advised of Brothers' guilty plea. (*Id.* at ¶ 13).

   *2.     Brothers' Earned Commissions*

In the interim between his April 2004 guilty plea and his November 2006 sentencing, Brothers continued to work on the Print sales team and exceeded all expectations. Brothers was Print's lead sales representative in 2005 and one of the top two in 2006. (*Id.* at ¶ 12). Brothers was rewarded for his top performance. For example, in 2006, Brothers closed a lucrative deal with

Alliance Title in which he was to be paid commissions based upon Alliance Title's projected and actual usage. (*Id.* at ¶ 14). That same year, he was even awarded a special exception where he received double the monthly draw despite a company-wide change in sales force compensation. (*Id.* at ¶ 13). In November 2006, Bev Franklin, a Print employee, sent Brothers an e-mail outlining his earned commissions that would be paid through 2009. (*Id.* at ¶ 14). Sarah Boden approved the earned commission payment plan. (*Id.*).

### 2. *Potential Mercury Companies Deal*

Another illustrative deal of Brothers' was one with Mercury Companies. He had been cultivating the client relationship for 2-3 years. (*Id.* at ¶ 18). The deal, if closed, would have entitled Brothers to a commission of up to $3,000,000. (*Id.*).

### 3. *Print Stock Option Plan*

In July 2006, Defendant Pitney Bowes, Inc. ("Pitney") purchased Print and became its new owner. (*Id.* at ¶ 16). Brothers, however, had been unaware of Pitney's plans to purchase Print and, subsequent to the purchase, was not made aware of Pitney's company policy against employing convicted felons. (*Id.* at ¶¶ 16, 20). "At or near the sale of Print's stock," Print terminated Brothers' participation in the Print stock option plan resulting in a loss to Brothers of about $250,000. (*Id.* at ¶ 17). Print did not cancel the stock option plans of other similarly situated Print employees. (*Id.*).

### 4. *Print Retention Bonus Program*

Notwithstanding the cancellation of Brothers' stock option plan, in August 2006, Print oddly designated Brothers as a qualified participant in a new retention bonus program. (*Id.* at ¶ 19). Brothers was awarded a $186,983 retention bonus to be paid in three installments. (*Id.*). The program, however, stated that a person terminated for cause would forfeit any unpaid retention

bonus. (*Id.*). Brothers received the first installment of his bonus at some point thereafter. (*Id.*).

**B.     The Breach**

Employees from Print, including Stevens, submitted character reference letters to the U.S. District Court in North Carolina in May and June 2006 in support of Brothers' sentencing hearing. (*Id.* at ¶ 15). Stevens even offered to fly to North Carolina to testify on Brothers' behalf at the sentencing hearing. (*Id.*). On September 1, 2006, Stevens resigned from Print. (Stevens Mot. to Dismiss, Ex. A., Declaration of Gary Stevens, at ¶ 3) ("Stevens Decl.")). On November 21, 2006, Brothers was sentenced to 20 months of imprisonment in a minimum security facility. (*Id.* at ¶ 20). On December 4, 2006, Print placed Brothers on a paid leave of absence pending an investigation into the matter. (*Id.*). On December 7, 2006, Print terminated Brothers's employment pursuant to Pitney's felony conviction policy. (*Id.*). Brothers claims that Print and Pitney seized on his felony conviction as a pretext to avoid paying his earned and potential commissions arising from lucrative deals like Alliance Title and Mercury Companies. (*Id.*).

**C.     The Lawsuit**

On February 23, 2007, Brothers filed suit against Print, Pitney, and Stevens in the 116th Judicial District Court of Dallas County, Texas, asserting various claims. On March 6, 2007, Defendants removed the case to this Court on the basis of diversity of citizenship. On May 23, 2007, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss (doc. 12). On June 18, 2007, Plaintiff filed a Second Amended Complaint with leave of the Court (doc. 19). Defendants have filed individual motions to dismiss. At issue are Brothers' claims for breach of contract, tortious interference with contract and fraud. Brothers has voluntarily withdrawn his promissory estoppel claim. The motions to dismiss are now ripe for review and determination by the

Court.

## II. Analysis

A.  **Motion to Dismiss for Failure to State a Claim**

   *1.  Legal Standard*

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court liberally construes the complaint in Plaintiffs' favor, and all pleaded facts are taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). Once a plaintiff adequately states a claim, he or she may support this claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

   *2.  Count One - Breach of Contract Against Print*

In Count One, Brothers claims Print breached five contracts:

(1)   promises not to terminate and to pay commissions during incarceration;
(2)   failure to pay stock options;
(3)   failure to pay retention bonus;
(4)   failure to pay earned commissions; and
(5)   anticipatorily repudiating obligations for Mercury Companies deal.

(Compl. ¶¶ 22-23). Print moves to dismiss the first contract ("the oral promises") because, by its nature, the oral agreements could not be performed within a year, and the Texas Statute of Frauds mandates that such an oral agreement had to have been in writing to be enforceable.[1] Print Mot. at 3-4. Print cites Brothers' continued work at Print for over 60 months (from early 2003 to December 2006) as proof that the oral promise could not have been performed within one year.

---

[1] Print and Pitney limit their motions to dismiss the breach of contract claim to these early 2003 oral promises. Print Mot. at 4 n.14; Pitney Mot. at 4 n.15.

Brothers, on the other hand, emphasizes that this agreement *could* have been performed within a year, and the Statute of Frauds is inapplicable. Plaintiff's Br. at 11.

The Texas Statute of Frauds requires a promise that cannot be performed within one year to be in writing. Tex. Bus. & Com C. Ann. 26,01(a) & (b)(6) (Vernon 2005). In *Niday v. Niday*, the Texas Supreme Court found that the Statute of Frauds barred the enforcement of an oral contract in which performance within one year was not possible. 642 S.W. 2d 919, 920 (Tex. 1982) (funeral licensing required two years of schooling and apprenticeship). In contrast, an indefinite term employment contract can be performable within a year by its very nature. *See Miller v. Riata Cadillac Co.*, 517 S.W. 2d 773, 775-76 (Tex. 1974) (emphasizing a contract is not within the Statute of Frauds as long as performance within the year is "possible."). For example, the defendant in *Gerstacker v. Blum Consulting Engineers, Inc.*, promised not to fire the plaintiff "except for good cause." 884 S.W. 2d 845, 849 (Tex. App.-Dallas 1994). The court found that the term employment was performable within one year, and the Statute of Frauds did not apply. *Id.* at 851.    Here, Brothers correctly points out that it was *possible* for the oral contracts, specifically the assurances from Stevens and Brady,[2] to have been performed within one year. An expeditious resolution with both the United States Attorney's Office and the United States District Court and a light penalty, such as probation, is not beyond the pale such that performance within a year would have been impossible. Print's contention that the oral contract was, in fact, performed in 60 months derives from the benefit of hindsight and is not relevant. Print's motion to dismiss this claim is denied.

---

[2] As set forth in the Complaint, the other assurances from various Print employees over a vague period of a few months hardly qualify as enforceable oral promises. To the extent Brothers maintains these allegations properly aver additional breaches of contract, the Court dismisses those claims on Rule 12(b)(6) grounds.

### 3. *Count Five – Tortious Interference With Existing Contract Against Pitney*

Brothers claims that Pitney tortiously interfered with an "enforceable agreement" between Brothers and Print. (Compl. ¶ 48). Pitney, like Print, raises a statute of frauds defense. The elements for a tortious interference with contract claim are:

(1) the existence of a contract subject to interference;
(2) the willful and intentional act of interference;
(3) the interference was the proximate cause of plaintiff's damage; and
(4) actual damages or loss.

*MGE UPS Sys., Inc. v. Fakouri Elec. Engig, Inc*, 422 F.Supp. 2d 724, 740 (N.D. Tex. 2006). As to which agreement of the five purported contracts Brothers claims Pitney interfered remains unclear. However, given the allegations concerning Pitney, it appears that Brothers contends that Pitney tortiously interfered with the "oral promises" contract made in "early 2003." For the reasons set forth *supra*, the Court denies Pitney's motion to dismiss in its entirety.

### 4. *Count Three – Fraud Against Print and Stevens*

Brothers' fraud claim is ambitious and lengthy. He claims that:

> Steven's and Print's (by reason of the actions and omissions of Stevens, Brady, Ric Torres, J.E. Scott and Sarah Boden) actions as described above constitute fraud. Specifically, and without limitation, Plaintiff would not have pled guilty or continued to perform services on behalf of Print had it not been for the material misrepresentations of fact relating to Stevens' and Print's promises to stand behind Plaintiff, continue to employ Plaintiff regardless of the outcome of the indictment against him, continue to employ Plaintiff and pay him commissions while incarcerated, if that occurred, and to "true up" his commissions at the end of each year based upon the customer's actual usage. Stevens and Print willfully defrauded Plaintiff by knowingly misrepresenting facts *or* by recklessly representing material facts without any knowledge of the truth and as a positive assertion, with the intention of inducing Plaintiff into performing, and further, by promising to do certain things while having the *present intention not to do so or* with the knowledge that doing so would violate company policy. *Alternatively*, Stevens and Print made statements based upon false statements or facts, *or the opinions were known to be false when made. In*

> *the further alternative*, Stevens and Print concealed or failed to disclose material facts *within their knowledge*, knowing that Plaintiff was ignorant of the facts and did not have an equal opportunity to discovery the truth, and Stevens and Print intended to induce Plaintiff to take some action by concealing or failing to disclose the facts.

(Compl. ¶29) (emphasis added).

Print and Stevens argue that Brothers has failed again to properly plead his fraud allegation. Defendants contend that Brothers does not allege facts with the requisite degree of particularity required by Rule 9(b), sufficient to show an inference of fraud (intent) or justifiable reliance or to escape the Statute of Frauds. Print Mot. at 5-12; Stevens Mot. at 4-5; 9-11.

In Texas, the fraud elements are:

(1)	a material representation was made;
(2)	it was false when made;
(3)	the speaker either knew it was false or made it without knowledge of the truth;
(4)	the speaker made it with the intent it should be acted upon;
(5)	the party acted in reliance; and
(6)	the party was injured as a result.

*Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002).

Rule 9(b) elevates the federal rules' liberal pleading standards to require plaintiffs to plead the circumstances constituting fraud claims with particularity. Fed. R. Civ. P. The Fifth Circuit requires plaintiffs alleging fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001); *see also Williams v. WMX Tech., Inc.* 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules"). Accordingly, this Court applies Rule 9(b) "with force, without apology." *Williams,* 112 F.3d at 178.

The Court, however, is mindful of the difficulties in alleging conditions of the mind and notes that Rule 9(b) does relax the particularity requirement for scienter. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other condition of mind of a person may be averred generally). Nevertheless, a plaintiff must still allege specific facts showing an inference of fraud. *Tuchman*, 14 F.3d, 1061, 1068 (5th Cir. 1994) (citing cases). The plaintiff may sufficiently allege intent by pointing out circumstances or facts that reasonably indicate intent or motive to commit fraud. *Id.*

1. *Heightened Pleading Requirements*

Given another "bite at the apple," the Court still finds Brothers' Second Amended Complaint devoid of the necessary particularity for a fraud claim. This is particularly frustrating in light of the Court's previous Memorandum Opinion in which the Court opined that Brothers must state "when and where each allegedly fraudulently statement was made" *and* explain "why the statements were false or fraudulent." Mem. Op. at 11. Brothers has identified some specific statements that, at least, meet Rule 9(b)'s "what":

(1)     Stevens' assurance of Brothers' continued employment;
(2)     Stevens' promise of Brothers' paid commissions during incarceration; and
(3)     Brady's assurance of Brothers' paid commissions during incarceration.

Unfortunately, as before, the allegations fail to detail the requested "when" and "where."

Meanwhile, Brothers' fraud allegations predicated on the grouped pleadings that Ric Torres, J.E. Scott and Sarah Boden (whose employment post-dates the "early 2003" promises) also committed fraud flout the definition of Rule 9(b)'s particularity. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363-66 (5th Cir. 2004); *FMC Int'l A.G. v. ABB Lummus Global, Inc.*, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006) (plaintiff cannot "attribute vaguely the alleged fraudulent activity to the 'defendants' collectively."). For example, the allegation "[o]ver the

next several months while at the office or on the telephone, [Stevens, Dan Brady, Ric Torres and J.E. Scott] emphatically assured Brothers that *they and Print* would stand behind him whatever his decision was" must be parsed into individual statements and time frames. (Compl. ¶ 10) (emphasis added).

Brothers' contention that Print and Stevens have fair notice since the "facts of the parties' conversations are also peculiarly within Stevens' and Print's knowledge" only magnify his pleading deficiencies. Plaintiff's Br. at 10. Brothers, after all, was a party to some of these conversations and has not articulated any reason why he cannot plead the "who," "when," and "where." Brothers' new catch-all allegation that "[a]ll of these conversations occurred in early 2003 either at Print's office in Dallas, Texas or over the telephone" evinces, at best, a *de minimis* effort at re-pleading. (Compl. ¶ 10).

### 2. *Intent*

More importantly, the Court finds that Brothers, yet again, fails to allege facts sufficient to explain *why* the alleged statements by either Print or Stevens were fraudulent. The Court finds few, if any, facts supporting any plausible inference of fraud, *i.e.,* any Print employee had knowledge of the falsity of any statement or had no intention of performing any promises at the time when the statements were made. *Tuchman,* F.3d 1068; *Formosa Plastics Corp. v. Presidio Engineers and Contractors*, 960 Sw. 2d 41, 48 (Tex. 1998) (emphasizing that evidence of fraud must be relevant to time alleged fraud occurred). To the contrary, as Print points out, Brothers' Second Amended Complaint is replete with facts that indicate that Print employees had no fraudulent intent.

First, the allegations demonstrate that Print did, at least, partially perform on its obligations to continue to employ, reward him and stand by him for almost three years. Under Texas law, that

partial performance negates any argument that a party did not intend to perform. *See Reyna v. First Nat'l Bank*, 55 S.W. 3d 58, 68 (Tex. App.-Corpus Christi 2001) (finding no partial payment on contract negated claim that defendant did not intend to perform). Indeed, this partial performance is considerable. Brothers received higher compensation that his peers. In May and June 2006, Sarah Boden, Ric Torres and J.E. Scott -- Print employees Brothers contends committed fraud against him -- wrote character reference letters for his sentencing hearing. Stevens even offered to personally testify on Brothers' behalf at the sentencing hearing. The letters and Stevens' offer, taken together, serve as a good indication that they were "stand[ing] behind him." Moreover, in August 2006, he qualified for a retention bonus for a generous $186,983, and received the first payment of the bonus. In November 2006, Print even outlined in writing his commission payment plan *through 2009*. Sarah Boden, who had just written him a character reference letter, approved this commission payment plan. It was only after the guilty plea on November 21, 2006 where it appears from the Complaint that Print broke any of its alleged promises to Brothers. These allegations taken together undermine any inference of fraud.

Brothers proffers an odd hodge-podge of alternative theories of why any given statement was fraudulent at the time it was made, but, taken together or individually, are inconsistent or illogical. Plaintiff's Br. at 2-5; Compl. ¶ 29. First, he cites his December 2006 job termination as proof of fraudulent intent in "early 2003." Assuming *arguendo* that amounted to a failure to perform, that termination, in and of itself, does not amount to fraud. *Formosa Plastics Corp.,* 960 Sw. 2d at 48 (noting that "mere failure to perform" is not evidence of fraud). It also neglects the temporal requirement that the "early 2003" statements had to be fraudulent at the time they were made. Another of Brothers' alternate theories, that Stevens had fraudulent motive to make false promises

to Brothers to keep a top producer and increase Print's bottom-line, has no merit. *Tuchman*, 14 F.3d at 1068-69 ("incentive compensation can hardly be the basis on which an allegation of fraud is predicated").

Ultimately, Brothers' attempt to salvage his pleadings to create an inference of fraud is belied by the inception of the Pitney company policy on felonies in July 2006, well after any of the purported statements were made. It is simply not possible, under the alleged facts, for any Print employee to have made promises to Brothers "recklessly" or knowing that "doing so would violate company policy." Plaintiff's Br. at 3. The allegations showing partial performance only reinforce the conclusion that no Print employee made any fraudulent statement to Brothers.

For these reasons, the Court grants Print's Motion to Dismiss Count Three.

### 3. *Leave to Amend*

The Court will grant Brothers' request for leave to amend the fraud count one last time. *Cates v. Int'l Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) (noting policy favoring leave to amend); *Tuchman*, 112 F.3d at 180 (reversing district court's denial of motion to dismiss after plaintiff failed two attempts to plead with particularity). The Court *sua sponte* also grants Brothers leave to amend his tortious interference count to clarify which purported contract(s) he contends that Pitney interfered with.

### B. Personal Jurisdiction

Stevens moves to dismiss because the district court does not have personal jurisdiction, or in the alternative, should not exercise personal jurisdiction under the fiduciary shield doctrine. Brothers argues that specific personal jurisdiction exists, and Stevens is not entitled to protection from the fiduciary shield doctrine. Plaintiff's Br. at 16-18. For the following reasons, the Court will

decline to exercise personal jurisdiction over Stevens and grant his motion to dismiss.

   1.   *Factual Standard: Prima Facie Case*

The plaintiff bears the burden of establishing a district court's personal jurisdiction over a nonresident defendant. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). The plaintiff may meet such a burden by presenting a *prima facie* case for personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V*, 213 F.3d 841, 854 (5th Cir. 2000). Allegations in the complaint are taken as true, except in the face of a controverting affidavit, but all conflicts of facts are resolved in plaintiff's favor. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *St. Claire v. Ensurelink*, 2002 WL 663570, at *2 (N.D. Tex. Apr. 19, 2002).

Before the Court are Brothers' Complaint and a declaration submitted by Stevens. Brothers has elected not to submit a counter-declaration.

   2.   *Legal Standard*

The personal jurisdiction inquiry is two-fold. First, a court must determine whether the nonresident defendant is amenable to service of process under the law of the forum state.[3] *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). Second, the court must test whether the exercise of personal jurisdiction is in conformity with the due process clause of the Fourteenth Amendment. *Spademan*, 772 F.2d at 1189.

   3.   *Due Process Requirements*

---

[3] *Pedalahore v. Astropark, Inc.* 745 F.2d 346, 347 (5th Cir. 1984) (a district court with diversity jurisdiction must determine whether the forum state can assert long-arm jurisdiction). Here, the first inquiry is simple. Texas conveys long-arm jurisdiction to the limits of the federal constitution. Tex. Rev. Civ. Stat. Ann. Art 2031b; *Hall v. Helicopteros Nacionales del Columbia, S.A.*, 638 S.W. 2d 870, 872 (Tex 1982), *rev'd on other grounds*, 466 U.S. 408 (1984).

Fourteenth Amendment due process affords a nonresident defendant "fair warning that a particular activity may subject [the defendant] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). To satisfy federal due process, the nonresident first must have some "minimum contact" with the forum. *Pedalahore,* 745 F.2d at 348. Second, it must not offend "traditional notions of fair play and substantial justice" to require the defendant to be hailed into the forum state. *International Shoe v. Washington*, 326 U.S. 310, 316 (1945).

There are two forms of personal jurisdiction: general and specific. General jurisdiction requires the nonresident defendant to have "continuous and systematic" contact with the forum state. *Wilson*, 20 F.3d at 650-51. Specific jurisdiction, on the other hand, exists when the cause of action arises out of the defendant's contacts with the forum state. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986).

Even if a court determines that due process would not be offended if, in pertinent part, a court finds personal jurisdiction over a corporation, personal jurisdiction over an individual corporate employee is not automatic. The fiduciary shield doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Spademan,* 772 F.2d at 1197. The underlying rationale is that it would be unfair to force an individual to personally defend a suit arising from acts done on behalf of the employer. *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990).

    *a.       General Jurisdiction: Continuous and Systematic*

Based on the allegations and Stevens' Declaration, there is no evidence of continuous and systematic contact. Stevens declares that he is a resident of Washington and, when he was the Print

CEO, he had "limited contact" with Texas consisting of occasional phone calls and a few visits to Dallas office. Stevens Decl. ¶ 2-3. Brothers impliedly concedes the point by arguing only that the Court has specific jurisdiction over Stevens. Plaintiff's Br. at 16.

      b. *Specific Jurisdiction: Minimum Contacts*

On the other hand, Brothers' specific allegations regarding Stevens' conduct concern Stevens' conversations with Brothers, either on the telephone or in person, give rise, in part, to Brothers' cause of action, particularly the breach of contract claim. In that context, Brothers' allegations set forth evidence of specific personal jurisdiction.

      c. *Fiduciary Shield Doctrine*

Nonetheless, Brothers fails to overcome the fiduciary shield doctrine. The Court, assuming specific personal jurisdiction exists, declines to exercise personal jurisdiction over Stevens who was acting at all relevant times in the capacity of a Print corporate executive. The crux of Brothers' argument to overcome the fiduciary shield doctrine relies fatally on Brothers' woefully pled fraud allegations against Stevens. Brothers now argues in his Response that Stevens stood to personally gain "tremendous benefit" of Brothers' continued employment. Plaintiff's Br. at 18. As a threshold matter, Brothers' allegations fail to connect Brothers' successes to Stevens' personal finances. More importantly, Brothers argument leads to the illogical conclusion noted in *Tuchman* that anyone can infer fraudulent intent by relying on an individual's compensation that is keyed to performance. 14 F.3d at 1068-69. Finally, as explained *supra*, Brothers has failed to allege that Stevens knowingly made false representations, particularly when the alleged facts demonstrates otherwise. *See Kingston v. Helm*, 82 S.W. 3d 755, 758-59 (Tex. App.-Corpus Christi 2002) (individual made false representations); *Hyman Farm Service v. Earth, Oil & Gas Co.,* 920 S.W. 2d 452, 455 (Tex. App.-

Amarillo 1996) (individual made false representations).

Nor does Brothers' Complaint make a case for the application for an exception to the fiduciary shield doctrine. *Compare Lewis v. Fresne*, 252 F.3d 352, 359 n.6 (5th Cir. 2001) (finding allegations that individual defendant deliberately misled plaintiff to advance personal interests removed the fiduciary shield doctrine) *with Burchfield v. Stein*, 2002 WL 318341, at *3 (N.D. Tex. 2002) (applying fiduciary shield doctrine to president). The fiduciary shield doctrine bars this Court from any exercise of personal jurisdiction over Stevens.

    d.  *Fair Play*

Because the fiduciary shield doctrine applies, the Court need not determine whether the exercise of personal jurisdiction here would comport with notions of fair play and substantial justice.

    e.  *Request for Continuance to Conduct Discovery*

Brothers' request for a continuance to conduct limited jurisdictional discovery is denied. The fiduciary shield doctrine is not a new concept in the Fifth Circuit. Brothers has had multiple opportunities to allege sufficient facts or to submit a counter-declaration to evince fraud or the inapplicability of the fiduciary shield doctrine. In addition, Brothers fails to explain, let alone attempt to explain, how a limited telephone deposition on jurisdiction of Stevens would yield any relevant testimony on this issue.

For these reasons, the Court grants Stevens' motion to dismiss in its entirety for lack of personal jurisdiction.

### III. Conclusion

For the foregoing reasons, the Court DENIES, in part, and GRANTS, in part, Print's Motion to Dismiss Plaintiff's Second Amended Complaint. Count Three (fraud) is dismissed without

prejudice. The Court DENIES Pitney's Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety. The Court GRANTS Stevens' Motion to Dismiss Plaintiff's Second Amended Complaint, and hereby dismisses all claims against Stevens in its entirety without prejudice. Plaintiff has voluntarily withdrawn Count Four (promissory estoppel).

Plaintiff is granted leave by this Court to file a Third Amended Complaint to re-plead his fraud and tortious interference with contract claims. The Court admonishes Plaintiff that no further leave of the Court will be granted to re-plead his Complaint. Brothers shall have **15 days from the date of this order** to file an Amended Complaint.

SO ORDERED.

SIGNED November 8, 2007

**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**